# In re HSIUNG, Petitioner

*In Visa Petition Proceedings*

A76 854 232

Decided by the Associate Commissioner, Examinations, July 31, 1998.

(1) A promissory note secured by assets owned by a petitioner can constitute capital under 8 C.F.R. § 204.6(e) if: the assets are specifically identified as securing the note; the security interests in the note are perfected in the jurisdiction in which the assets are located; and the assets are fully amenable to seizure by a U.S. note holder.

(2) When determining the fair market value of a promissory note being used as capital under 8 C.F.R. § 204.6(e), factors such as the fair market value of the assets securing the note, the extent to which the assets are amenable to seizure, and the present value of the note should be considered.

(3) Whether a petitioner uses a promissory note as capital under 8 C.F.R. § 204.6(e) or as evidence of a commitment to invest cash, he must show that he has placed his assets at risk. In establishing that a sufficient amount of his assets are at risk, a petitioner must demonstrate, among other things, that the assets securing the note are his, that the security interests are perfected, that the assets are amenable to seizure, and that the assets have an adequate fair market value.

(4) A petitioner engaging in the reorganization or restructuring of a pre-existing business may not cause a net loss of employment.

ON BEHALF OF PETITIONER:    ROBERT LUBIN
8229 BOONE BOULEVARD
SUITE 610
VIENNA, VA  22182

## DISCUSSION

The preference visa petition was denied by the Director, Nebraska Service Center, who certified the decision to the Associate Commissioner for Examinations for review. The petitioner has chosen not to respond. The decision of the director is affirmed.

The petitioner seeks classification as an alien entrepreneur pursuant to section 203(b)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(5), The petitioner is one of 14 "investors" in Imedix, Inc. Imedix was established on June 16, 1997, for the purpose of structuring, purchas-

ing, reorganizing, and upgrading health-care facilities in targeted areas of the United States. No clinics have yet been acquired, but the petitioner estimates that 27 clinics will employ approximately 194 employees.

The director determined that the petitioner had failed to make an active, at-risk investment in that the project was not even in the start-up phase; Imedix had not conducted any sort of business or financial analysis and had not engaged in any discussions with health-care facilities, state health officials, or real-estate agents, for example. The director also found that the required amount of capital had not been placed at risk and that the petitioner had failed to show that he was investing his own funds, obtained through lawful means. The director was further unable to ascertain a reasonable basis for Imedix's determination that it would create 194 positions, as this estimate was given without reference to medical needs of specific communities to be served.

After review of the evidence contained in the record, the decision of the director is found to be correct. Beyond the director's decision, other issues must be addressed. The affirmance of the director's decision is based not only on the director's findings but also on the findings discussed below.

The first issues concern the petitioner's payment agreement and his claimed assets abroad. As stated by the director, the petitioner agreed, pursuant to this payment agreement, to make an initial payment of $50,000, another payment within 30 days after the petition was approved, a payment of $200,000 one year after entry into the United States, and a final payment of $200,000 prior to the removal of the conditions of permanent resident status. The petitioner agreed to secure the principal sum of $500,000 by an assignment of his property having a net fair market value of $500,000.

The petitioner's claimed investment is in the form of a promissory note. A promissory note can constitute "capital" under 8 C.F.R. § 204.6(e) if the note is secured by assets owned by the petitioner. These assets must be specifically identified as securing the note. Furthermore, any security interest must be perfected to the extent provided for by the jurisdiction in which the asset is located,[1] and the asset must be fully amenable to seizure by a U.S. note holder.[2]

---

[1] This office notes that the Office of General Counsel ("OGC") has previously stated its opinion that the regulations do not require that indebtedness meet the requirements for secured transactions under Article 9 of the Uniform Commercial Code ("UCC"); similarly, OGC has stated that the regulations do not require that the lender perfect his security interest. Memorandum from Paul W. Virtue to Louis D. Crocetti, Jr. (June 27, 1995), *reprinted in* 72 INTERP. REL. 1209 (September 1, 1995), While the regulations do not specifically require that a promissory note be secured under the UCC, merely "identifying" assets as securing a loan, without perfecting the security interest, is not meaningful since the note holder cannot be assured that the identified assets will remain available for seizure in the event of default.

[2] See below for a discussion concerning the seizure of assets.

The petitioner has submitted no evidence that a security interest has been recorded in any particular property, and the promissory note does not even identify what assets are securing it. In addition, as the director stated in her decision, the petitioner has not established that the assets he claims to own in Taiwan are in fact his. The bank accounts at the Bank of Taiwan, containing NT$5,736,012 (US$199,613 as of September 3, 1997, according to counsel), belong to Dustin Hsiung; the petitioner has not demonstrated that he and Dustin Hsiung are the same person. The real estate in Taiwan, appraised at NT$11,167,843 (US$388,640 as of September 3, 1997), belongs to Ping-Hsiu Liu; the petitioner has not demonstrated that he and Ping-Hsiu Liu are the same person. Therefore, even if these assets were properly securing the note, the note does not meet the definition of "capital" because the petitioner has not shown that it is secured by his assets.

Assuming arguendo that the note at issue here did constitute "capital," the regulations at 8 C.F.R. § 204.6(e) further provide that all capital must be valued at fair market value in United States dollars. Whether a promissory note has a fair market value equivalent to its face value depends on many factors, including the value of the assets securing the note. The Taiwanese real estate, appraised at $388,640, is subject to a mortgage of NT$7,000,000 (approximately US$201,180). The net value of this real estate, then, is approximately $187,460. Assuming that the petitioner has made his initial payment of $50,000, assuming that the real estate and the money in the bank accounts (which contain $199,613) are his, and assuming that these assets do secure the promissory note, the net result is that a $450,000 obligation is being secured by only $387,073 in assets.[3] This is not sufficient to meet the fair-market-value requirement of the regulations.

The fair market value of a promissory note also depends on the amenability of the assets securing the note to seizure. Both the bank account and real estate are located abroad. In order for foreign assets, including real estate, to be considered as acceptable security, a petitioner must establish that the laws of the foreign country in which the assets are located would recognize, and permit execution of, a judgment of a court of the United States or of any State with respect to the foreign assets.[4] In the alternative, the petitioner must establish that the courts of that foreign country would themselves recognize and enforce the promissory note absent the judgment of an American court. Otherwise, the promissory note would clearly not have the value attributed to it by the petitioner. The petitioner here has not

---

[3]The current exchange rate is closer to NT$34.27 = US$1. WASHINGTON POST, July 21, 1998, at C10. At this exchange rate, the net value of the assets is only US$288,994.89.

[4]This, for example, could take the form of a transfer of ownership of the property to the creditor or it could take the form of a court-ordered liquidation and transfer of assets to the creditor.

presented any evidence as to Taiwanese law regarding the seizure of assets.

Even if assets can be reached under the laws of the applicable foreign country, considerable expense and effort would be involved in pursuing them. These factors would reduce the fair market value of a promissory note secured by foreign assets. It is not clear to what extent the value of the petitioner's promissory note should be reduced since the petitioner has not submitted any evidence as to the cost of enforcing a judgment against his purported property.

The fair market value of a promissory note further depends on its *present* value. *Matter of Izumii,* 22 I&N Dec. 169 (July 13, 1998), Money received today is worth more than money received tomorrow, and promissory notes are routinely discounted in recognition of this principle. A petitioner who bases his claim of investment on a promissory note must demonstrate that the promissory note has a fair market value equal to the amount of the investment. A petitioner cannot merely claim that his promissory note for $500,000 is worth $500,000, even if the note is properly secured with personal assets, amenable to seizure, of sufficient fair market value. This petitioner has not furnished evidence of the present value of his promissory note and has therefore failed to meet his burden.

To establish that the petitioner has invested, or is actively in the process of investing, he must show that he has placed the required amount of capital at risk.[5] 8 C.F.R. § 204.6(j)(2), The petitioner here has not shown that his assets are at risk. As discussed above, the petitioner has failed to demonstrate the following:  that the bank accounts and real estate in Taiwan allegedly securing the note belong to him; that these assets are in fact securing the note; that any security interest in these assets has been perfected to the extent provided for under Taiwanese law; and that these assets are amenable to seizure. In addition, even if the petitioner had established ownership of these assets, he still has not shown that the requisite amount of money is at risk; he has failed to demonstrate that the assets in Taiwan have a total net fair market value of $500,000 (or $450,000 if he has already made his first payment of $50,000), and he has failed to allow for the estimated costs of seizing the assets should the need arise.

A further issue to be addressed concerns the petitioner's statement that Imedix plans to engage in "structuring, purchasing, reorganizing and upgrading health care facilities." Although the petitioner could argue that Imedix is the new commercial enterprise at issue here, the clinics Imedix claims it will purchase are pre-existing, ongoing businesses. Through his

---

[5]This applies regardless of whether the petitioner is claiming that his promissory note is itself capital or whether he claims that it is merely evidence that he is in the process of investing cash. An actual commitment does not exist if the petitioner's assets are not at risk. *See* 8 C.F.R. § 204.6(j)(2).

company's business activities, a petitioner cannot directly cause a net loss of employment. It is not known if the projected figure of "194" employees represents the maintenance of the former levels of employment at the unidentified clinics (in the case of troubled businesses), the addition of 10 new positions per investor, or an actual loss of employment.

**ORDER:** The decision of the director is affirmed. The petition is denied.